UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SAN JOSE UNIFIED SCHOOL DISTRICT,<br><br>    Plaintiff,<br><br>  v.<br><br>H. T., a minor, by and through his Guardian ad Litem, T.A.,<br><br>    Defendant.<br>_____<br>H. T., a minor, by and through his Guardian ad Litem, T.A.,<br><br>    Counter-Claimant,<br><br>  v.<br><br>SAN JOSE UNIFIED SCHOOL DISTRICT,<br><br>    Counter-Defendant. | Case No.  21-cv-04001-BLF<br><br>**ORDER DENYING DISTRICT'S MOTION FOR SUMMARY JUDGMENT; DENYING H.T.'S CROSS-MOTION FOR SUMMARY JUDGMENT; AND AFFIRMING ALJ'S DECISION**<br><br>[Re:  ECF 31, 32] |

  This action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, concerns the manner in which the San Jose Unified School District ("the District" or "San Jose") conducted a functional behavior assessment ("FBA") of minor student H.T.  The District requested a due process hearing before the State of California's Office of Administrative Hearings ("OAH") to determine whether the District appropriately conducted the FBA.  H.T. requested a due process hearing before the OAH to determine whether the District denied H.T. a free appropriate public education ("FAPE") by failing to appropriately conduct the FBA and by failing to provide his father with all requested education records relating to the FBA.

The administrative cases were consolidated, and a due process hearing was conducted by Administrative Law Judge Robert G. Martin ("the ALJ"). The ALJ found against the District on its issue, determining that the District did not appropriately conduct the FBA and that as a result H.T. was entitled to an independent educational evaluation ("IEE") at the District's expense. The ALJ also found against H.T. on his two issues, determining that H.T. had not established that he was denied a FAPE as a result of the District's failure to appropriately conduct the FBA and failure to provide all requested education records.

The District filed this action to obtain review of the ALJ's adverse determination on its issue, and H.T. filed a counterclaim to obtain review of the ALJ's adverse determination on his two issues. The parties have filed cross-motions for summary judgment that have been fully briefed and argued to the Court at a hearing held September 15, 2022.

Both motions for summary judgment are DENIED and the ALJ's decision is AFFIRMED.

**I.    BACKGROUND**

H.T. was eleven years old and attending a sixth-grade general education class in the District at the time of the administrative hearing. Administrative R. ("AR") 536. He was eligible for special education services as a student with autism and speech or language impairment, and he had an individualized education program ("IEP") in place. AR 536, 1003.

*Parent's Request for FBA*

On October 10, 2019, H.T.'s father ("Parent") sent an email to the District's Director of Special Education, Seth Reddy ("Reddy"), requesting an FBA of H.T. AR 265-67. In the email, Parent stated that previous assessments of H.T. in 2016 and 2018 had identified "behavior that has been interfering with his ability to learn." *Id*. Parent listed thirty-six specific concerns. *Id*. Parent advised, "I expect to be included in the functional assessment of behavior and as active participant on the team developing the behavior intervention plan." *Id*.

An assessment plan was prepared by a District school psychologist, Laurie Whittemore, indicating that a behavioral specialist would be appointed to conduct the FBA. AR 269-70. Parent signed the assessment plan on October 25, 2019. *Id*. The assessment plan provided space for Parent to identify particular information he would like considered, as it included a check box

2

next to the following language: "I would like the following assessment information to be considered by the IEP team: _____." *Id*. However, Parent left the box unchecked and the space blank. *Id*.

*Draft FBA dated December 18, 2019*

In early December 2019, the District assigned board-certified behavior analyst Jennifer Harmon ("Harmon") to conduct an FBA of H.T. AR 549. Harmon testified at the administrative hearing that an FBA typically involves use of three assessment tools – observation of the student, interviews with those who interact with the student, and review of records. AR 937. Harmon used those assessment tools when she conducted the FBA of H.T. AR 940-46. She observed H.T. at school and interviewed his general education teacher, Joseph Griggs, his physical education teacher, Mike Vickers, and his special education teacher, Heidi Grillo. *Id*. Harmon also reviewed H.T.'s education records, including the 2016 and 2018 assessments referenced by Parent in his October 2019 email to Reddy. AR 941.

For reasons not apparent from the record, Harmon was not given a copy of Parent's October 2019 email when she was asked to conduct the FBA, nor was she informed that Parent had expressed any specific concerns. AR 979. As part of her normal practice when conducting an FBA, Harmon called Parent to solicit his input. AR 961-62. Harmon placed that call sometime between December 5, 2019 and December 11, 2019. *Id*. Parent did not answer the telephone on that occasion, so Harmon left a voicemail identifying herself and explaining the purpose of her call. *Id*. Parent did not call her back. *Id*.

On December 11, 2019, Parent sent Reddy an email advising that someone named Jennifer had called about H.T.'s assessment. AR 272. Parent stated follows: "I don't know who she's [*sic*] and I prefer not to discuss my son's confidential records with her at the moment. If additional information is required, please let me know." *Id*. Reddy replied on the same date, informing Parent that Jennifer Harmon was part of H.T.'s IEP team to conduct the FBA. *Id*. Reddy advised Parent that "[a] critical part of the FBA is talking to parents about any behaviors they are seeing in home (if any) and what they are doing that is successful/not successful." *Id*. Reddy stated, "It is optional, so if you would rather not participate, we can respect that decision.

3

However, your input would be greatly valued. Let me know if you have any questions." *Id*.

Within twenty-four hours of receiving Parent's email, Reddy directed Harmon not to attempt any further contact with Parent. AR 1066-67. Reddy testified that he did not copy Harmon on his emails with Parent because Parent had a history of filing complaints against the District, and that he did not want to inflame Parent. AR 1255. Harmon understood from Reddy's direction not to contact Parent that Parent did not want to participate in the FBA. AR 1068. Harmon went forward without input from Parent and completed a draft FBA dated December 18, 2019. AR 387-95. The draft FBA indicated that "Parent declined participating for the parent interview for this assessment." AR 388.

*Parent's Response to Draft FBA*

H.T.'s special education teacher, Heidi Grillo, emailed a copy of the draft FBA to Parent on December 20, 2019, along with a notice that an IEP meeting had been scheduled for January 9, 2020. AR 384-95. Reddy sent a follow-up email asking if the date for the IEP meeting would work for Parent. AR 285-86. Parent responded to Reddy by email dated December 24, 2019, which stated in its entirety: "[H.T.] will be represented by an attorney and I'll have to consult his attorney before I can agree to the proposed date/time. Happy Holidays." AR 285.

On January 31, 2020, Parent sent an email to District Superintendent Nancy Albarran ("Albarran"), which was copied to Reddy, expressing "complete disagreement" with the draft FBA. AR 407. Parent attached a pdf document titled "Failed FBA," which was a three-page letter to Albarran detailing Parent's criticisms of the draft FBA. AR 279-83, 402. Parent complained that the assessor had failed to consider the concerns outlined in Parent's October 2019 email to Reddy. AR 282. Parent also disputed the representation in the draft FBA that Parent had declined to participate, asserting that his October 2019 email to Reddy "was sufficient to fulfill the Parent's participation." *Id*.

Reddy replied to Parent's January 31, 2020 email on February 10, 2020, expressing the District's view that the FBA was appropriate and that when Harmon attempted to contact Parent, Parent was unwilling to participate. AR 406. However, Reddy indicated that "in the spirit of cooperation" he had asked Harmon to review the concerns raised in Parent's October 2019 email,

4

and to update the FBA if appropriate. *Id.* Reddy also stated that the District still wished to schedule an IEP meeting to discuss the FBA and update H.T.'s IEP.

Parent replied on February 10, 2020, disputing the notion that he was unwilling to participate in the FBA as "totally inaccurate and deliberately misleading." AR 405. Parent stated that he was glad the District was willing to reconsider its decision and address his concerns, and indicated that he would be willing to meet with the IEP team after a revised FBA was provided. *Id.*

*Revised FBA dated December 18, 2019*

Reddy provided Harmon with Parent's October 2019 email so that she could review Parent's specific concerns. AR 978-80. Harmon testified that Parent's concerns listed in that email were identified in H.T.'s 2016 and 2018 assessments, which she had reviewed before preparing the draft FBA. *Id.* Accordingly, Harmon made only minor modifications to the draft FBA by adding some details to Section 6, Health Records, to make clear that she had reviewed the 2016 and 2018 assessments. AR 408-17, 1005. Harmon did not change the December 18, 2019 "Date of Report" on the revised FBA. AR 408.

Reddy emailed Parent the revised FBA on February 14, 2020. AR 277. Parent responded by email on February 15, 2020, stating that the revised FBA was identical to the original draft FBA. AR 276. Reddy replied on February 25, 2020, explaining that the two documents were not identical, as Section 6 of the original draft FBA had been revised to reflect Harmon's review of the 2016 and 2018 assessments. AR 275-76. Reddy also suggested that it was "imperative" to have an IEP meeting to discuss the FBA and H.T.'s needs. *Id.* Parent rejected that suggestion by email dated February 25, 2020, stating that the District had failed to conduct an appropriate FBA, that the IEP team was not equipped to deal with legal issues, and that Reddy would have an opportunity to meet H.T.'s legal team in the future. AR 275.

*Parent's Request for H.T.'s Education Records*

On February 26, 2020, Parent emailed Albarran a request for H.T.'s education records relating to his May 2018 Triennial assessment and December 2019 FBA. AR 288. Parent and Reddy then engaged in back-and-forth emails, with Reddy stating that the requested records had

1  been provided and Parent insisting that they had not. AR 292-95.

2  Reddy later became aware that Harmon had kept notes on her laptop that were not
3  produced to Parent. AR 1329. Harmon testified that it was her practice to keep notes of her
4  observations and interviews in a Word file on her school-issued laptop when she was in the midst
5  of conducting an FBA. AR 964-65. Eventually, she cleaned up those notes in the Word file
6  before copying and pasting them into the FBA. AR 965. Harmon did not share her raw notes with
7  anyone. AR 998. Harmon left her employment at the District in June 2020, and she turned in her
8  school-issued laptop at that time. AR 562, 998. Reddy testified that shortly thereafter, he
9  discovered that Harmon had kept notes on her laptop which were destroyed when the laptop was
10 wiped by school technology personnel. AR 1329.

*April 2020 IEP Meeting and May 2020 Parent Request for IEE*

12 The District scheduled an IEP meeting for April 30, 2020. AR 1331. Parent was given
13 notice of the IEP meeting but did not attend. AR 1332. Reddy made the decision to go forward
14 with the IEP meeting in Parent's absence. *Id*.

15 On May 8, 2020, Parent requested an IEE at public expense. AR 554. The District denied
16 Parent's request on May 18, 2020. *Id*.

*Administrative Proceedings*

18 On June 2, 2020, the District filed a request for an administrative due process hearing. AR
19 533, 554. H.T. also requested a due process hearing. AR 533. The District asserted a single
20 issue, whether the District appropriately conducted the FBA ("San Jose's Issue"). AR 534  H.T.
21 asserted two issues – whether the District denied him a FAPE by failing to appropriately conduct
22 the FBA ("Student's Issue 1"), and whether the District denied him a FAPE by failing to provide
23 his father with all requested education records relating to the FBA ("Student's Issue 2"). The two
24 administrative cases were consolidated. AR 522.

25 The ALJ conducted a four-day hearing via videoconference between December 8, 2020
26 and December 11, 2020. *Id*. The ALJ heard testimony from several witnesses, including Harmon,
27 Parent, Reddy, and H.T.'s teachers, among others. AR 626-30. The ALJ also admitted numerous
28 documents, including correspondence between Parent and District officials, the FBA, and other

IEP-related documents. AR 255-57. The ALJ asked the witnesses questions to clarify his understanding of events, for example, clarifying that Harmon was not given Parent's October 2019 email listing his concerns prior to completion of the original draft of the FBA. AR 174.

The ALJ issued a lengthy written decision dated February 25, 2021. AR 533. On San Jose's Issue, whether the District appropriately conducted the FBA, the ALJ determined that the District "did not conduct its FBA of Student appropriately, because it unreasonably failed to obtain Parent's input in conducting the FBA." AR 554. The ALJ determined that "Student prevailed on San Jose's Issue." AR 563. The ALJ ordered the District to "fund an independent functional behavior assessment evaluation" of H.T. AR 564.

On Student's Issue 1, whether the District denied H.T. a FAPE by failing to appropriately conduct the FBA, the ALJ found that although the District's FBA was not appropriate, H.T. failed to prove that this procedural violation denied him a FAPE. AR 556-58. The ALJ determined that "San Jose prevailed on Student's Issue 1." AR 564.

On Student's Issue 2, whether the District denied H.T. a FAPE by failing to provide all requested education records, the ALJ found that although the District failed to provide all records, H.T. failed to prove that this procedural violation denied him a FAPE. AR 558-63. The ALJ determined that "San Jose prevailed on Student's Issue 2." AR 564.

*Present Action*

The District filed this action in May 2021. Compl., ECF 1. The District's complaint contains a single claim that seeks review of the ALJ's adverse determination on its issue. *Id*. H.T. filed a counterclaim asserting two claims, one seeking review of the ALJ's adverse determination on H.T.'s two issues and the other seeking recovery of attorneys' fees and costs as the prevailing party. Answer and Counterclaim, ECF 10.

The parties have filed cross-motions for summary judgment which were argued to the Court at a hearing held on September 15, 2022. Min. Entry, ECF 39.

## II. LEGAL STANDARD

Traditional standards for summary judgment do not apply in cases brought under the IDEA. *See Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995).

7

"Though the parties may call the procedure a 'motion for summary judgment' in order to obtain a calendar date from the district court's case management clerk, the procedure is in substance an appeal from an administrative determination, not a summary judgment." *Id*. Consequently, while the existence of disputed facts would preclude summary judgment under the usual application of Federal Rule of Civil Procedure 56, the district court may resolve conflicting evidence and make factual determinations at the summary judgment stage in IDEA cases. *See id*. at 891.

When evaluating an appeal of an ALJ's decision in an IDEA case, the district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). "Thus, judicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471 (9th Cir. 1993). While the district court must give "due weight" to an ALJ's decision in an IDEA case, the district court has discretion to determine the correct level of deference to be given. *See Wartenberg*, 59 F.3d at 891.

The party challenging the administrative determination "bears the burden of demonstrating that the ALJ's decision was incorrect." *Crofts v. Issaquah Sch. Dist. No. 411*, 22 F.4th 1048, 1053 (9th Cir. 2022).

**III.   DISCUSSION**

The District moves for summary judgment on its claim that San Jose's Issue was wrongly decided by the ALJ. H.T. moves for summary judgment on his counterclaim that Student's Issue 1 and Student Issue 2 were wrongly decided by the ALJ. The Court addresses the motions in turn, below. Before doing so, however, the Court discusses the level of deference due to the ALJ's decision, and the District's objection to H.T.'s references to an IEE that occurred after the administrative proceedings were completed.

**A.   Level of Deference**

As discussed above, the weight given to administrative findings in any particular case lies

within the sound discretion of the district court. *See Wartenberg*, 59 F.3d at 891. The Ninth Circuit has offered the following guidance, however: "When exercising its discretion to determine what weight to give the hearing officer's findings, one criterion we have found useful is to examine the thoroughness of those findings." *Id*. "The amount of deference accorded the hearing officer's findings increases where they are 'thorough and careful.'" *Id*. Thus, in *Ojai*, the Ninth Circuit determined that the administrative decision was entitled to "substantial weight" where "[t]he hearing officer's decision evince[d] his careful, impartial consideration of all the evidence and demonstrate[d] his sensitivity to the complexity of the issues presented." *Ojai*, 4 F.3d at 1476. The Ninth Circuit has offered similar guidance in other cases, explaining in *R.B.* that "[w]e treat a hearing officer's findings as 'thorough and careful' when the officer participates in the questioning of witnesses and writes a decision 'contain[ing] a complete factual background as well as a discrete analysis supporting the ultimate conclusions.'" *R.B., ex rel. F.B.v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 942 (9th Cir. 2007).

The ALJ's careful 33-page decision identified the correct legal framework for each issue addressed, accurately summarized the evidence, and explained in detail the ALJ's reasoning. AR 533-65. The ALJ found for H.T. on some points, most notably in concluding that the District did not appropriately conduct the FBA and that H.T. was entitled to an IEE at public expense. AR 554-56. However, the ALJ also found that H.T. did not prove that the District's failure to conduct an appropriate FBA denied him a FAPE. AR 558. The ALJ's express recognition of the importance of parental participation in a child's assessment, and simultaneous acknowledgement that not every procedural violation results in the denial of a FAPE, demonstrated the ALJ's "sensitivity to the complexity of the issues presented." *Ojai*, 4 F.3d at 1476. The ALJ was meticulous in identifying who had the burden of proof on each issue, and in evaluating the evidence relevant to that issue. AR 547-63. The ALJ questioned witnesses to clarify his understanding of events, as when he confirmed with Harmon that she was not given Parent's October 2019 email prior to completion of the original draft FBA. AR 174.

The ALJ's decision differs markedly from administrative findings in other cases that were unsupported by the record despite their "length and superficial plausibility." *See M.C. by &*

*through M.N. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1194 n.1 (9th Cir. 2017) (discussing *Timothy O. v. Paso Robles Unified Sch. Dist.*, 822 F.3d 1105 (9th Cir. 2016)). For the foregoing reasons, this Court in its discretion finds it appropriate to give substantial deference to the ALJ's decision here.

### B. H.T.'s Reference to IEE that Occurred after the Administrative Proceedings

As noted above, the ALJ determined Student's Issue 1 adversely to H.T., finding that although the District's FBA was not appropriate, H.T. failed to prove that this procedural violation denied him a FAPE. AR 556-58. The ALJ reasoned that H.T. had not proved that Parent would have provided Harmon any material information beyond the concerns listed in Parent's October 2019 email. AR 558. In other words, the ALJ determined that Harmon's FBA would not have been different even had she obtained Parent's input. *Id*.

H.T. concedes that he cannot show that the outcome of the December 2019 FBA would have been different had Parent participated. H.T.'s Mot. at 19, ECF 32. However, H.T. argues that the outcome of the FBA might have been different, asserting that an IEE funded by the District and completed in November 2021 recommended several interventions not encompassed by the District's FBA. *Id*. H.T. asserts that the November 2021 IEE recommended a Behavior Intervention Plan ("BIP") and several goals targeting identified maladaptive behaviors and additional assessments. *Id*. at 18-19.

The District objects to H.T.'s reference to the November 2021 IEE. The District acknowledges that the Court "shall hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C). However, the District points out that H.T. has not actually presented any evidence that there was a November 2021 IEE or what such IEE recommended. According to the District, H.T. "grossly mischaracterizes the findings of the IEE." District's Reply at 8 n.4, ECF 36. The District argues that in any event, information about an IEE that occurred after the administrative proceedings would not be relevant to review of those proceedings. *See Adams v. State of Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1999) ("We do not judge an IFSP in hindsight.").

The District's argument that H.T. has not actually submitted any evidence of the November 2021 IEE is well-taken. Even if evidence regarding the IEE properly could be

considered under § 1415(i)(2)(C), H.T. has not submitted any such evidence. The Court cannot rely on H.T.'s bare representation regarding the existence and result of the IEE, particularly in light of the District's assertion that H.T. mischaracterizes the IEE. Additionally, the two-year lapse of time between the FBA at issue here and the IEE would certainly diminish or eliminate any relevance the later report would have in the present case. Accordingly, the Court has not considered H.T.'s arguments based on the November 2021 IEE.

### C.     District's Motion

Having resolved those preliminary issues, the Court takes up the District's motion for summary judgment on its claim that San Jose's Issue was wrongly decided by the ALJ. Again, San Jose's Issue at the administrative level was whether the District appropriately conducted H.T.'s FBA. The ALJ found that the District "did not conduct its FBA of Student appropriately, because it unreasonably failed to obtain Parent's input in conducting the FBA." AR 554. The District bears the burden of demonstrating that the ALJ's decision was incorrect. *See Crofts*, 22 F.4th at 1053.

The District challenges the ALJ's decision on two grounds. First, the District argues that the ALJ erred by failing to properly analyze and consider the parental input obtained by District in conducting its FBA, especially given the lack of cooperation by Parent in the FBA process. Second, the District argues that the ALJ failed to properly analyze and consider the alleged failure to obtain parental input for harmless error. H.T. argues that the first of these grounds should not be considered by the Court because it was not raised at the administrative level and because it is akin to an inappropriate affirmative defense. H.T. also argues that the ALJ correctly determined that the District unreasonably failed to obtain Parent's input, and that the ALJ was not required to engage in a harmless error analysis once he determined that the District failed to prove that its FBA was appropriate.

#### 1.     Asserted Failure to Consider that Parental Input was Obtained

A parent has the right to request that the school district conduct a reassessment of a child who has already been determined to be eligible for special education. *See* 20 U.S.C. § 1414(a)(2)(A)(ii); Cal. Educ. Code § 56381(a)(1). Assessors are required to "use a variety of

11

assessment tools and strategies to gather relevant functional, developmental, and academic information, *including information provided by the parent*." 20 U.S.C. § 1414(b)(2)(A) (emphasis added); *see also* Cal. Educ. Code § 56320(b).  If the parent disagrees with an assessment obtained by the school district, the parent has the right to obtain, at public expense, an IEE of the student from qualified specialists.  *See* 34 C.F.R. § 300.502(b); Cal. Educ. Code § 56329(b).  The school district may initiate a due process hearing to show that its assessment is "appropriate."  34 C.F.R. § 300.502(b); Cal. Educ. Code § 56329(c).  If the due process hearing results in a determination that the school district's assessment is appropriate, the parent may still obtain an IEE, but not at public expense.  *See* 34 C.F.R. § 300.502(b); Cal. Educ. Code § 56329(c).  If the due process hearing results in a determination that the school district's assessment is not appropriate, it must provide the IEE.  *See* 34 C.F.R. § 300.502(b); Cal. Educ. Code § 56329(c).

In determining whether the District's FBA was appropriate, the ALJ considered whether the District satisfied its statutory obligation to obtain parental input.  AR 554.  In considering that issue, the ALJ recognized the extraordinary importance that the IDEA, its implementing regulations, and case law place on parental involvement in the special education process.  AR 554-55.  The ALJ stated that parental involvement is so important that the District was obligated to use reasonable efforts to obtain Parent's input even if the District perceived Parent as difficult.  AR 555.  The ALJ recognized, however, that there are some circumstances in which a parent's failure to cooperate with a school district will excuse the district's procedural violations of statutory requirements.  *Id.*  After considering testimony from Parent, Reddy, Harmon, and others, and reviewing documentary evidence including the numerous emails exchanged by Parent and District personnel during the FBA process, the ALJ determined that in this case Parent was not so uncooperative as to excuse the District's failure to obtain his input in the FBA.  AR 555.

This Court agrees with the ALJ's summary of the applicable legal framework.  The Ninth Circuit has held in numerous cases that parental involvement in the special education process is of paramount importance, and that duties imposed on state and local education agencies are not conditioned on parental cooperation.  *See, e.g., Crofts*, 22 F.4th at 1054 (recognizing importance of parental participation in the IEP process); *Doug C. v. Hawaii Dep't of Educ.*, 720 F.3d 1038,

1045 (9th Cir. 2013) ("We have consistently held that an agency cannot eschew its affirmative duties under the IDEA by blaming the parents."); *Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1051 (9th Cir. 2012) (holding that in the special education context duties imposed on state and local education agencies are not conditioned on parental cooperation). In certain circumstances, however, a parent's lack of cooperation can become so problematic as to excuse a district's procedural violations of the IDEA. *See Ms. S. ex rel. G. v. Vashon Island Sch. Dist.*, 337 F.3d 1115, 1133 (9th Cir. 2003) ("We hold that where the school district has repeatedly provided the parent with the opportunity to participate meaningfully in the IEP process, the school district has not violated its obligations. . . ."), superseded by statute on other grounds as stated in *G.M. ex rel. Marchese v. Dry Creek Joint Elementary Sch. Dist.*, 595 F. Appx. 698 (9th Cir. 2014); *E.P. v. San Ramon Valley Unified Sch. Dist.*, No. C05-01390 MJJ, 2007 WL 1795747, at *11 (N.D. Cal. June 21, 2007) (parents' lack of cooperation in scheduling IEP meeting excused parental attendance at meeting).

None of the cases cited by the District suggest that a different legal framework applies. The District simply disagrees with the ALJ's evaluation of the facts of this case under that framework. Specifically, the District argues that the ALJ did not adequately consider the input the District obtained from Parent – the October 2019 email list of concerns – in light of Parent's lack of cooperation.

Before addressing the District's argument, the Court takes up H.T.'s contentions that the argument is precluded because it was not presented to the ALJ during the administrative hearing, and that the District's argument that Parent was uncooperative is akin to an improper assertion of an affirmative defense. H.T.'s contentions are without merit. The degree of Parent's cooperation in the FBA was a focal point of the administrative hearing and the ALJ's decision. Moreover, because the District was the moving party with respect to San Jose's Issue, its arguments cannot be characterized as an affirmative defense. In the Court's view, the District's current arguments are well within the scope of the District's request for review of the ALJ's decision.

The ALJ's decision is entitled to substantial deference for the reasons discussed above. Moreover, based on the Court's independent evaluation of the administrative record, the Court

finds that the District gave up on obtaining Parent's input too easily. Harmon made only one telephone call to Parent, leaving a voicemail for Parent to call her back. AR 961-62. When Parent responded by email to Reddy, advising that he did not wish to speak to Harmon "at the moment," he also asked Reddy to let him know "[i]f additional information is required." AR 272. Reddy took that email to mean that Parent did not wish to be involved further in the FBA and immediately instructed Harmon not to contact Parent again. AR 1066-67. It appears that Reddy may have been gun-shy due to Parent's prior complaints against the District. AR 1255. This Court finds as a factual matter that Reddy's conduct was unreasonable, as nothing in Parent's communications to that point suggested a categorical unwillingness to participate in the FBA. Reddy never rescinded his direction to Harmon not to contact Parent, and in fact Harmon did not attempt to do so after leaving him a single voicemail. The Court finds unpersuasive the District's suggestion that Parent could have reached out to the District to participate in the FBA. The statutory obligation to involve Parent was on the District, unless and until Parent's conduct became so egregious as to excuse that obligation. The Court agrees with the ALJ that Parent's conduct did not cross that line.

The Court also finds unpersuasive the District's assertion that it satisfied its statutory obligation to obtain Parent's input, based on Parent's listing of his concerns in his October 2019 email in which he made the initial request for an FBA. Parent's October 2019 email started the FBA process. It was not shared with Harmon until after she completed her draft FBA. Reddy clearly recognized that Parent's further involvement would be valued, as stated in his email to Parent dated December 11, 2019. AR 272. The District points to a statement in the letter Parent emailed to Superintendent Albarran on January 31, 2020 as evidence that Parent's listing of his concerns when he initiated the FBA was sufficient participation to meet the District's obligation. Parent disputed the representation in the draft FBA that Parent had declined to participate, asserting that his October 2019 email to Reddy "was sufficient to fulfill the Parent's participation." AR 282. The context of Parent's statement makes clear that Parent was attempting to rebut the suggestion that he had refused to participate in the FBA process. Nothing in the statement, or the letter as a whole, suggests that Parent was acknowledging that the District had

fulfilled its statutory obligations with respect to the FBA. The Court simply is not persuaded that Parent's statement is sufficient to establish that the District fulfilled is statutory obligation to obtain Patent's input. This is particularly true given that at the time Parent made that statement, Harmon had not yet been provided with Parent's October 2019 email listing his concerns. AR 405, 978-80.

Accordingly, the District has not met its burden to show that the ALJ erred by failing to properly analyze and consider the parental input obtained by District in conducting its FBA.

### 2. Asserted Failure to Conduct Harmless Error Analysis

The District next argues that the ALJ failed to properly analyze and consider the alleged failure to obtain parental input for harmless error. The ALJ stated that if a district fails to prove its assessment was appropriate, it must provide an IEE at public expense. AR 537. The ALJ indicated that the parent is not required to show anything further, for example, that the inappropriate assessment denied the student a FAPE or impeded the parent's participation in the development of the student's IEP. *Id*. This Court agrees with the ALJ's statement of the law, as it is consistent with a plain reading of the applicable statutes, providing that when a parent requests an IEE the District must provide it at public expense or demonstrate through an administrative proceeding that the District's assessment was appropriate. *See* 34 C.F.R. § 300.502(b); Cal. Educ. Code § 56329(c). That construction of the law is supported by *M.Z. ex rel. D.Z v. Bethlehem Area Sch. Dist.*, 521 F. App'x 74, 77 (3d Cir. 2013), in which the Third Circuit held that "[o]nce the Hearing Officer determined that the reevaluation was inappropriate, M.Z. was entitled to an independent educational evaluation at public expense as a matter of law."

The District has not cited any binding or persuasive authority to the contrary. The District cites *C.W. v. Capistrano Unified Sch. Dist.*, No. SACV 11-1157 DOC, 2012 WL 6093765 (C.D. Cal. Dec. 5, 2012), for the proposition that errors in assessments are procedural in nature, must be material, and must result in some harm. *C.W.* does not involve an ALJ's determination that a district's assessment was inappropriate and does not discuss – or even mention – harmless error analysis in the assessment context. In *Ford ex rel. Ford v. Long Beach Unified Sch. Dist.*, 291 F.3d 1086, 1087 (9th Cir. 2002), the administrative hearing officer *upheld* the school district's

assessment and the district court, in turn, upheld the hearing officer's decision. Accordingly, the decision does not speak to the relevant issue, whether an ALJ must engage in a harmless error analysis after determining that a district's assessment is inappropriate.

The District's reliance on *W.G. v. Bd. of Trustees of Target Range Sch. Dist. No. 23, Missoula, Mont.*, 960 F.2d 1479, 1484 (9th Cir. 1992), also is unavailing. The cited portion of the opinion stands for the unremarkable proposition that "[p]rocedural flaws do not automatically require a finding of a denial of a FAPE." The ALJ did not find that failure to obtain Parent's input deprived H.T. of a FAPE. The ALJ determined that the failure to obtain Parent's input rendered the FBA inappropriate and entitled H.T. to an IEE at public expense. This Court agrees.

The District has not met its burden to show that the ALJ erred by failing to undertake a harmless error analysis before determining that the District's inappropriate FBA entitled H.T. to an IEE.

The District's motion for summary judgment is DENIED. The ALJ's determination on San Jose's Issue is AFFIRMED.

### D. H.T.'s Motion

H.T. moves for summary judgment on his counterclaim that Student's Issue 1 and Student's Issue 2 were wrongly decided by the ALJ. The District argues that the issues were correctly decided by the ALJ. The Court addresses Student's Issue 1 and Student's Issue 2, below. Before doing so, however, the Court notes that there is some suggestion in H.T.'s briefing that the District bears the burden of proof on Student's Issues 1 and 2. As the party challenging the ALJ's decision on these issues, H.T. "bears the burden of demonstrating that the ALJ's decision was incorrect." *Crofts*, 22 F.4th at 1053.

#### 1. Student's Issue 1

Student's Issue 1 at the administrative level was whether the District denied H.T. a FAPE by failing to appropriately conduct the FBA. The ALJ found that although the District's FBA was not appropriate, H.T. failed to prove that this procedural violation denied him a FAPE. AR 556-58. H.T. contends that the ALJ did not apply the correct legal standard when he applied a harmless error analysis to the District's failure to appropriately conduct the FBA. While not

entirely clear from H.T.'s papers, based on H.T.'s briefing and the oral argument presented by H.T.'s counsel, the Court understands H.T. to be arguing that a District's failure to appropriately conduct an FBA constitutes a per se deprivation of a FAPE.

The Ninth Circuit's recent decision in *Crofts* summarizes the framework for analyzing a claim that a student has been denied a FAPE. "[A] state must comply both procedurally and substantively with the IDEA." *Crofts*, 22 F.4th at 1054 (internal quotation marks and citation omitted). "The court engages in a two-step inquiry to determine whether a child has received a FAPE." *Id*. "It determines first whether the IDEA's procedures were complied with and second whether the district met its substantive obligation to provide a FAPE." *Id*. "While some procedural violations can be harmless, procedural violations that substantially interfere with the parents' opportunity to participate in the IEP formulation process, result in the loss of educational opportunity, or actually cause a deprivation of educational benefits clearly result in the denial of a [FAPE]." *Id*. (internal quotation marks and citation omitted).

None of the authorities cited by H.T. hold that a different framework applies. H.T. argues that the failure to include a parent's input in an FBA is a per se statutory violation that is not subject to a harmless error analysis. H.T. relies on broad language in several Ninth Circuit cases emphasizing the importance of parental participation in the IEP process. *See, e.g., M.C. by & through M.N. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1198 (9th Cir. 2017); *Timothy O. v. Paso Robles Unified Sch. Dist.*, 822 F.3d 1105 (9th Cir. 2016); *Amanda J. ex rel. Annette J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 892 (9th Cir. 2001). However, none of those cases holds that the failure to include a parent's input in an FBA constitutes a per se statutory violation.

The ALJ applied the correct legal framework, outlined above, in evaluating whether the District denied H.T. a FAPE by failing to appropriately conduct the FBA. AR 556-58. First, the ALJ determined that H.T. proved that the District's FBA was inappropriate because the District unreasonably failed to obtain Parent's input in conducting the FBA. AR 556. Next, the ALJ considered whether this procedural violation impeded H.T.'s right to a FAPE or caused a deprivation of his educational benefits. AR 556-58. The ALJ concluded that H.T. did not present

evidence that the District's failure obtain Parent's input had any effect on the FBA, or impeded Parent's ability to participate in the IEP. These factual determinations of the ALJ are entitled to substantial deference for the reasons discussed above.

Moreover, the Court has reached the same conclusions as the ALJ based on its independent review of the administrative record. The only concerns identified by Parent throughout the FBA process were those listed in his October 2019 email. Harmon testified that Parent's concerns listed in that email were identified in H.T.'s 2016 and 2018 assessments, which Harmon reviewed before preparing the draft FBA. AR 978-80. Harmon testified expressly that the recommendations she included in the FBA would not have changed even if she had been provided with Parent's October 2019 email to Reddy prior to her assessment of H.T. AR 984.

The Court by no means intends to suggest that a district's failure to obtain a parent's input in an assessment can *never* deny the student a FAPE. The Court concludes only that on the particular facts of this case, H.T. has not shown that the ALJ erred in finding that the inappropriate FBA did not deny H.T. a FAPE. H.T. does not identify any additional information that Parent could have provided had Parent been included fully in the FBA process. H.T. speculates that Harmon might have been able to draw out information from Parent had she interviewed him. H.T.'s unsupported speculation is insufficient to establish that the ALJ's decision was in error.

H.T. has not met his burden to show that the ALJ erred in his determination of Student's Issue 1.

### 2. Student's Issue 2

Student's Issue 2 at the administrative level was whether the District denied H.T. a FAPE by failing to provide all requested education records. The ALJ applied the same two-part framework for procedural violations discussed above with respect to Student's Issue 1. The ALJ found that the District failed to provide Harmon's notes, which were kept on her laptop and ultimately wiped when she left her employment with the District. AR 558-63. However, the ALJ determined that H.T. failed to prove that this procedural violation denied him a FAPE. *Id*. The ALJ's determination is entitled to substantial deference.

Based on this Court's independent review of the administrative record, the Court agrees

that H.T. did not prove that the failure to provide Harmon's notes denied him a FAPE.  Harmon testified that it was her practice to keep notes of her observations and interviews in a Word file on her school-issued laptop when she was in the midst of conducting an FBA.  AR 964-65.  Eventually, she cleaned up those notes in the Word file before copying and pasting them into the FBA.  AR 965.  Accordingly, any information in Harmon's notes was included in the FBA.

H.T. has failed to identify how the District's failure to produce Harmon's notes deprived him of a FAPE.  He argues that "[n]o one knows what insights or inferences might have been gleaned from a review of such records. The District's destruction thereof, therefore, has foreclosed Parent's opportunity to show how they might have been relevant to his participation in his son's IEP process."  H.T.'s Reply at 8, ECF 37.  This unsupported speculation is insufficient to establish that the ALJ's decision was in error.  H.T. has not met his burden to show that the ALJ erred in his determination of Student's Issue 2.

H.T.'s motion for summary judgment is DENIED.  The ALJ's determinations on Student's Issue 1 and Student's Issue 2 are AFFIRMED.

## IV. ORDER

(1) The District's motion for summary judgment is DENIED.

(2) H.T.'s cross-motion for summary judgment is DENIED.

(3) The ALJ's decision is AFFIRMED.

(4) This order terminates ECF 31 and 32.

(5) The parties shall submit a joint status report by November 4, 2022, advising the Court whether there are any outstanding issues in this case or whether the Court may direct the Clerk to close the file.

Dated:  October 21, 2022

BETH LABSON FREEMAN
United States District Judge